(39 Misc. Rep. 251.)

## SCHUCK v. MAIN et al.

(Supreme Court, Trial Term, New York County. November, 1902.)

1. NEGLIGENCE—STORAGE OF EXPLOSIVES—EVIDENCE—PROXIMATE CAUSE.

An administratrix sued two independent firms for maintaining an alleged nuisance, in the storage in the city of certain chemicals, which exploded by a fire, causing the death of her intestate. The evidence showed that defendants and another firm, not a party to the action, occupied a seven-story building, in which they stored their property, consisting largely of a substance which the jury might have found to have been an explosive compound, and which the charter of the city forbade to be stored within it, except under certain restrictions. A fire occurred in the building, and an explosion followed an hour later. Held, that plaintiff could not recover without proof as to the order of time in which the goods of the separate defendants exploded, thereby showing whose goods were the proximate cause of, or contributed to, the death of the defendant.

Action by Rosa Schuck, administratrix of George Schuck, deceased, against Thomas F. Main and others. Motion to dismiss complaint granted.

Jacob Friedman (Robert A. Stewart, of counsel), for plaintiff.

Agar, Ely & Fulton (Alfred Ely and Louis M. Fulton, of counsel), for defendant Main.

Latson & Bonynge (Almet R. Latson, of counsel), for defendants Rogers & Pyatt.

Thomas N. Cuthbers (Almet R. Latson, of counsel), for defendants McKesson & Robbins.

FREEDMAN, J. I have carefully considered the several points made on the motion to dismiss, and upon them have come to the following conclusions:

The plaintiff claims that the action is brought for the maintenance of a nuisance causing the death of plaintiff's intestate, and not for negligence. There was a fire, which, after the lapse of some 15, 20, or 25 minutes, was followed by three explosions. The nuisance complained of consists in the storage of the articles which the fire caused to explode; the articles complained of consisting of chlorate of potash, sulphur, nitrates of strontia, and barium. They are commercial articles, and none of them are shown to contain within itself such a well-known explosive character as is contained in powder, nitroglycerine, gunpowder, etc. The doctrine of the Powder-House Cases, therefore, does not apply.

I am also of the opinion that the common law applicable to the maintenance of a nuisance is available to the plaintiff only so far as it has been re-enforced in this state by the fire laws of this city. The storage of combustibles and explosive articles in this city is regulated by the charter of Greater New York, which prohibits certain things directly, and forbids others unless a permit is obtained from the fire department. The provisions of the charter upon this point are police regulations in prevention of a nuisance. Now, the only provisions of the charter applicable to the case at bar are contained in section 764, and they are to the effect: First, that no explosive compounds shall be stored or kept for sale in the city, except at such places, in such manner, and in such quantities as shall be determined by the fire commissioner in the exercise of his discretion, under a permit by him granted therefor, subject to be revoked at any time by said commissioner; and, secondly, that no greater quantity of sulphur shall be stored or kept in or upon any one building within the city than 1,000 pounds, except the same shall be stored and kept in such building and manner as said commissioner may require, under a special permit by him issued therefor. Now, the defendants McKesson & Robbins are chargeable upon their admissions contained in their proofs of loss with having had in storage in the building in question 3,920 pounds of chlorate of potash, 52,394 pounds of sulphur, 21,234 pounds of nitrate of strontia, and 6,600 pounds of nitrate of barium. But this admission was not followed up by the testimony of a witness sworn upon this trial, and therefore is not evidence against the other defendants. So the defendants constituting the firm of Rogers & Pyatt are chargeable, upon their admissions contained in their proofs of loss, with having had on storage in the building in question 72,128 pounds of chlorate of potash; but, as this admission was not followed up by the testimony of a witness sworn upon this trial, it is not evidence against the other defendants. The consequence is that as to the defendant Main there is no evidence that McKesson & Robbins or Rogers & Pyatt had anything on storage, nor is he shown to have had actual knowledge or notice of the storage of combustibles or explosives by any other merchant or firm. On the contrary, the evidence produced by the plaintiff, and by witnesses whom the plaintiff introduced as entitled to belief throughout, is that he had nothing to do with the storage department of Tarrant & Co., though he was president of the corporation. There is not sufficient evidence to connect him individually with participation in the maintenance of a nuisance. If the action were for negligence, a different case would be presented. So, if the action were against the corporation, a different case would be presented. But the corporation that controlled the building and did the storage business therein was not made a party to this action. As against the defendant Main, therefore, the complaint must be dismissed. As against the defendants constituting the firms of McKesson & Robbins and Rogers & Pyatt the case is different. Neither firm knew what the other had done, and therefore is not responsible for the acts of the other. Each firm had on storage a large quantity of chlorate of potash. As to that article, at least, the state of the evidence is of such a character as

to present a question of fact to be determined by the jury, namely, was it an explosive compound, within the meaning of that term as used in section 764? If it was such an explosive compound, its storage contrary to the fire laws was unlawful. The permit shown by the plaintiff to have been possessed by the corporation of Tarrant & Co. did not authorize its storage. For the reasons already stated, it is not necessary to say anything at present concerning the other articles stored by the defendants. If, therefore, there were no defect elsewhere, the case would have to go to the jury. But in order to recover, the plaintiff must establish as part of her case that the deceased met his death by reason of an explosion of the goods of the defendant sought to be held liable. There is not a particle of evidence in this case as to where, on any of the seven stories of the building, the goods of the two firms were stored, but there is evidence that at least another firm had equally explosive goods there. There is not a particle of evidence as to which goods exploded first. If the goods of the third firm, not a party to this action, exploded first, and killed the deceased, the defendants now here would not be liable, except upon proof that their goods contributed to his death. So, if the goods of one of the defendant firms exploded and killed the deceased before the goods of the other exploded, the other would not be held liable. So, if the deceased was killed in some other way than by an explosion, the defendants now here would not be liable. The result of all this is that, upon the point that the proximate cause of the death of the deceased must be shown to have been an explosion to which the particular goods of the defendants now here contributed, there is a vital defect of proof, which, under the authorities, is ground for a dismissal. The complaint must therefore be dismissed.

Complaint dismissed.